HUMPHREYS COUNTY *et al. v.* CASHIN *et al.*[*]

(Division A.   Nov. 3, 1924.)

[101 So. 571.   No. 24380.]

1. INJUNCTION. *County's suit to enjoin prosecution of mandamus or in alternative for judgment on indemnity bond held within jurisdiction of equity.*

Where appellant assigned to sureties a judgment in his favor against a county, and, on reversal of such judgment and recovery of another judgment, assigned it to his wife, equity had jurisdiction of county's action to enjoin wife from prosecuting mandamus suit to compel payment, and in alternative for relief against sureties to whom it had paid judgment on their indemnity bond, in which sureties filed cross-bill, claiming proceeds of such judgment, the entire controversy involving proceeds of such judgment.

2. JUDGMENT. *Assignees of judgment held entitled to proceeds of second judgment recovered, following reversal of assigned judgment.*

Where appellant assigned a judgment in his favor, pending appeal therefrom on reversal of assigned judgment and appellants' recovery of another judgment on subsequent trial, assignees were entitled to proceeds of second judgment, at least in court of chancery.

3. JUDGMENT. *Assignment to sureties on appeal bond, of judgment in another case, construed.*

Appellant's assignment to sureties on his appeal bond, of judgment in his favor in another action authorizing sureties "to collect same in event said decree be affirmed," *held* to entitle sureties to collect judgment in full before expending money as sureties, and to account merely for any excess.

4. INJUNCTION. *Prosecution of mandamus proceedings can be restrained.*

The prosecution of mandamus proceedings prior to rendition of judgment therein can be restrained by injunction.

*Headnotes 1.  Injunctions, 32 C. J., section 81;  2.  Judgments, 34 C. J., section 1000 (1926 Anno);  3.  Judgments, 34 C. J., section 987; 4.  Injunctions, 32 C. J., section 130.

Appeal from chancery court of Humphreys county.

Hon. E. N. Thomas, Chancellor.

Bill by Humphreys county against J. M. Cashin and wife and S. Castleman and wife, in which last-named defendants filed cross-bill.  From a decree dismissing original bill and cross-bill, plaintiff appeals, and last-named defendants cross appeal.  Reversed and remanded on direct and on cross appeal.

See, also, 128 Miss. 236, 90 So. 888, and 96 So. 316.

*Montgomery & Montgomery,* for appellant.

The remedy of Humphreys county at law is inadequate, and equity has jurisdiction of this cause to enforce the rights of a county which has paid a judgment to the legal or equitable assignees thereof—the very uncertainty of the *status* of the assignees itself affording equitable jurisdiction.

We would like to call the attention of the court to the entirely unsatisfactory, if not altogether hopeless position of Humphreys county—outside of the relief sought in chancery.  If this injunction suit cannot be maintained by Humphreys county, then let us see what follows.  The mandamus suit of Mrs. Cashin in the circuit court of Humphreys county would come on for trial.  The Castlemans are not parties to this mandamus suit.  Without the consent of the plaintiff there—which would not be given, of course—the Castlemans could not come into the law court at all and make their defense.  If, however, in some way the Castlemans were permitted to come into the law court, then at the first blow all of their rights as

equitable assignees of the two thousand dollar judgment would be lost. It would become simply a cold question of law whether as a legal proposition the assignment of the three thousand five hundred dollar judgment carried with it the cause of action upon which it was based, and was therefore a legal assignment of the second judgment for two thousand dollars. Neither Humphreys county nor the Castlemans could show in the action at law that the Castlemans were the equitable assignees of the two thousand dollar judgment, and that payment to the Castlemans was accordingly a good discharge of the said judgment.

So suppose as a matter of fact that Eugenia C. Cashin were permitted to go ahead and collect through this suit at law this two thousand dollar judgment from Humphreys county. Then Humphreys county would be compelled, of course, to file suit against the Castlemans and the sureties upon the indemnity bond furnished to the county by the Castlemans. It would be idle to say that Humphreys county could not do this. Regardless of how voluntary the payment of this two thousand dollar judgment by the county to the Castlemans might be construed to be—going upon the theory that the Castlemans had no claim under the assignment, of the three thousand five hundred dollar judgment to the proceeds of the later judgment for two thousand dollars—still on the indemnity bond, which constitutes an express agreement to repay, Humphreys county could predicate a suit against the Castlemans.

On the subject of "Payment," and recovery of voluntary payment, see 30 Cyc., Payment, 1302. Then the Castlemans, having been made to repay this money to Humphreys county could sue J. M. Cashin for breach of the warranty in his assignment of the three thousand five hundred dollar judgment, on the theory that the consideration for the assignment had failed and the warranties to the contrary had been breached. *Lile* v. *Hopkins,* 12 S. & M. 299.

And then, after the Castlemans recovered judgment against J. M. Cashin, how much better off would they be? The judgment roll of Humphreys county now has two judgments against J. M. Cashin, both of which are unsatisfied. In fact, the bill charges that the financial rating and credit of the said J. M. Cashin was at a very low ebb at the time the Castlemans befriended him by signing as sureties the five thousand dollar *supersedeas* bond.

Furthermore, Humphreys county realizes that after all it may be held that the Castlemans are only equitable assignees of this two thousand dollar judgment. If such were the final holding in the law court—in the mandamus suit—then Humphreys county would lose there. If such were the holding, then when the county sued the Castlemans on the indemnity bond, the Castlemans might be held to be the legal assignees of the two thousand dollar judgment, as the first suit would not be *res adjudicata* of the second—the two suits not being between the same parties. In such event, Humphreys county would certainly be encumbered with two suits instead of one, and the suits not being between the same parties, the judgment of one would not necessarily be binding in the other. And, again, it matters not how these two suits came out, if the Castlemans had to sue J. M. Cashin for breach of warranty, the judgments in the first two suits would not be binding upon J. M. Cashin, and the result might not be consistent with that of the first two suits.

In short, to rectify the situation, it is easy to see that three suits would be necessary. In no two of these suits would the parties be the same. Some would be brought in one county, and some in another. Different witnesses would probably be used. Consequently, inconsistent results not only might, but probably would, result from this circuitous litigation.

The fact that the *status* of the ownership of this two thousand dollar judgment by the Castlemans is uncertain —that is, whether the Castlemans are the legal owners

or the equitable owners thereof—this very thing makes the right of Humphreys county inadequate in a court of law. 5 C. J. 560, sec. 147 and note; *Tritt* v. *Colwell*, 31 Pa. 228.

After reviewing the surrounding facts and circumstances under which the assignment in question was executed, it is evident that the purpose of the assignment was to make the Castlemans the owners of this latter two thousand dollar judgment, to the extent necessary to protect themselves against liability under the five thousand dollars *supersedeas* bond. We want to give the court the full benefit of our investigation of the law of assignments. The question is an open one in Mississippi. Humphreys county, in its claim of payment by reason of payment to the assignees, could and would have a larger and more available defense if such defense were urged and set up in a court of equity. We confidently believe that this court will come to the same conclusion, and we will accordingly survey the whole question—which survey shows, in our judgment, that the Castlemans are probably the legal assignees of this two thousand dollar judgment, and that under all pertinent authorities the Castlemans are at least the equitable assignees of this two thousand dollar judgment, and are the parties who are, in equity, entitled to the fruits thereof. Accordingly, payment to such assignees constitutes, in equity, a complete discharge of the judgment.

I. *Rights at law under the assignment as presently drawn.*

(a) The great majority holding is that an assignment of a judgment carries with it the cause of action upon which the judgment is based, and hence the Castlemans are the legal assignees of this two thousand dollar judgment. (1) "It is a general principle that the absolute assignment of a judgment passes to the assignee every

remedy and security which the assignor had for the enforcement of the judgment." (Many cases cited to support.) "Of course the assignment of a judgment carries the debt on which the judgment is based." See note in 7 A. & Eng. Ann. Cases, 423-424. (2) 15 R. C. L. 777-778, sec. 230. (3) "Rights and Liabilities of Assignee of a Judgment. 23 Cyc. 1419-1420C. Rights and Liabilities of Parties. (4) "Assignment of Judgment—as an incident to the assignment of a judgment, the claim upon which the judgment is founded, and all remedies incident thereto, pass by the assignment." 5 C. J., secs. 129, 951, Assignments. (5) 2 Freeman on Judgments, sec. 431; 1 L. R. A. (N. S.) 150, note. (6) *Orion Brown* v. *William P. Scott,* 25 Cal. 189. (7) *King* v. *Miller,* 53 Or. 53, 97 Pac. 542; 5 C. J. 968, note 54 (c) affirmed; 32 S. C. 243; 223 U. S. 505; 56 L. Ed. 528 (1912); *King* v. *Miller,* 97 Pac. 542. (8) "Assignments as Security—Rights, Duties, and Liabilities of the Parties," 5 C. J. 956-7-8, secs. 141, 142.

(b) The minority holding of a few cases is to the effect that the assignment of a judgment does not carry with it the cause of action upon which it is based, and hence upon reversal of the judgment, the parties are relegated to their original position; hence the Castlemans, over in the law court, would not be legal assignees of the two thousand dollar judgment under this minority rule. (1) "The assignee of a judgment which is vacated on appeal takes no interest under the assignment." *Bennett* v. *Lathrop,* 71 Am. St. Rep. 222. The above case of *Railway Company* v. *Parks,* was simply a construction of Revised Statutes 1895, article 4647. It was purely a statutory decision in which the word, "or," contained in the statute played a great part. We submit that this authority should have no weight in Mississippi.

(c) Under all of the authorities, except possibly the Parks case, it is held or inferred that the assignee of the first judgment would be entitled in equity to the proceeds

of the later judgment. *Vila* v. *Weston,* 33 Conn. 42. We submit that it is consistent with all the cases, except the Parks case, to hold that the Castlemans were the equitable assignees of this two thousand dollar judgment, and that in a court of equity a decree will be rendered holding that payment to the Castlemans was a payment and discharge of the two thousand dollar judgment.

(d) Mississippi is an open forum upon the effect of the assignment of a judgment, where that judgment is later reversed and a new judgment obtained. We have been unable to find a Mississippi case passing upon the question of whether or not an assignment of a judgment carries with it the cause of action upon which the judgment is based, where the judgment itself is later reversed or vacated. But see *Schoolfield* v. *Hirsch, et al.,* 71 Miss. 55, 14 So. 528; *Pigford Gro. Co.* v. *Wilder,* 116 Miss. 233, 76 So. 745; *Lile* v. *Hopkins,* 12 S. & M. 299.

In Mississippi, the transfer of a cause of action *pendente lite* does not abate the suit as is the law in Connecticut. Under the laws of Mississippi, a chose in action may be assigned by parol or in writing. By virtue of section 496, Hemingway's Code (sec. 717, Code of 1906), the assignee of any chose in action may sue for and recover on the same in his own name, if the assignment be in writing. In case of the transfer of an interest in the cause of action after suit brought, the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action.

It is our contention that in Mississippi the Oregon rule should apply; that the Castlemans are legal assignees of this two thousand dollar judgment; and that payment by Humphreys county to the Castlemans of the proceeds of this judgment satisfied and discharged the judgment. But the remedy at law is not plain and adequate because of the rulings in such cases as that of *Vila* v. *Weston.* Humphreys county has therefore come into chancery.

We submit that a careful study of the cases cited shows that equity is the proper forum for one to take as his abiding place who claims payment by payment to equitable assignees. We submit that on account of the uncertainty of what might be declared to be the law of Mississippi, the remedy of Humphreys county in the mandamus suit over in the law court was absolutely incomplete and inadequate, and that Humphreys county had a right to come into the chancery court and set up its payment in a court where same will operate as a discharge of this two thousand dollar judgment whether the Castlemans be held to be the legal or the equitable assignees of this two thousand dollar judgment.  21 C. J., page 54, note of 66 (b).

The remedy of Humphreys county at law is inadequate, and equity has jurisdiction of this cause to enforce the rights of a county which has paid a judgment to the legal or equitable assignee thereof, the very uncertainty of the *status* of the assignee making the remedy at law inadequate and consequently affording equitable jurisdiction.

II.  *Equity has jurisdiction of this cause to avoid a multiplicity of suits, and to prevent circuity of action.* *Middleton* v. *Howell*, 127 Miss. 880, 90 So. 725.  All the Mississippi authorities are set out and reviewed in the opinion of the court in the Middleton case.  21 C. J., pages 72 to 82, sec. 48 (1) to 52.

III.  *Humphreys county and the Castlemans are in privity of contract by virtue of the indemnity contract bond.*  Coming now to the jurisdiction of equity to afford relief in this case because reformation is sought in the bill, it is contended by our opponents that though the bill does state a case for reformation, still equity has no jurisdiction here because Humphreys county is the complaining party and no privity of contract exists between the county on the one part and the Castlemans on the other.

We most respectfully submit that privity does exist, and that Humphreys county has the right to pray this court to reform the original assignment, if necessary. Let us first see what privity means. Funk & Wagnall's Students' Standard Dictionary, page, 552; Black's Law Dictionary, 942.

But opposing counsel says that the county is not in privity with the Castlemans. We submit that such argument is the purest fiction. The Castlemans are the real complainants. The county is the nominal complainant, but was forced to bring the suit because the county was attacked over in the law court. As to what persons are entitled to reformation: See 23 R. C. L., page 338, sec. 31; 34 Cyc. 950-951.

Again we say that Humphreys county is in privity of contract with the Castlemans by virtue of the indemnity contract. There is privity of contract. We submit that Mrs. Cashin is in privity of contract as to the first assignment for the simple reason that she is an assignee of one of the parties to this original assignment. It is elementary that she is in privity with J. M. Cashin. We confidently submit, therefore, that J. M. Cashin, Eugenia C. Cashin, S. Castleman, Pauline Castleman, and Humphreys county are all either parties or privies to this original assignment of the three thousand five hundred dollar judgment.

IV. *Equity has jurisdiction to grant reformation of the three thousand five hundred dollar assignment, if necessary.* Equity has jurisdiction of this cause and will here reform on the ground of mistake, especially in a case like this where the mistake was induced by the inequitable conduct on the part of the other party, J. M. Cashin.

In all such cases, reformation of the instrument will be granted on account of mistake of law. Both parties understand the contract, but in reducing same to writing, by a mistake of law, the written document does not ex-

press the actual contract. Pomeroy's Equity Jurisprudence (4 Ed.), sec. 845, 1722-23; sec. 847, 1727-28, sec. 848, 1729-30; *Barataria Canning Co.* v. *Ott,* 88 Miss. 771, 41 So. 378; *Ingram Day Lbr. Co.* v. *Robertson,* 92 So. 289; *Sparks* v. *Pittman,* 51 Miss. 511.

*Wells, Stevens & Jones, Jones & Womack, Ernest Kellner, Jr.,* and *J. M. Cashin,* for appellees.

There are only five material points to be considered.

I. Whether the conditional assignment of the three thousand five hundred dollar decree carried with it the cause of action or debt upon which that decree was based, and the subsequent decree for two thousand dollars rendered thereon, so that said last-named decree became the absolute property of Castleman, and in consequence thereof it became the duty of the board of supervisors to pay the amount owing under that decree to him.

As to the first proposition, neither the cause of action, nor the subsequent decree for two thousand dollars were assigned to Castleman, and did not pass to him under the conditional assignment of the three thousand five hundred dollar decree subsequently reversed. The true rule is that the assignee of a judgment or decree which is afterwards vacated or reversed on appeal, takes no interest under the assignment. *Bennett* v. *Lathrop,* 71 Am. St. Rep. 222; *Chilstrom* v. *Eppinger,* 78 Am. St. Rep. 49; *Brown* v. *Scott,* 25 Cal. 189; *Bolen* v. *Crosby,* 49 N. Y. 183; *Mumford* v. *Wright,* 12 Colo. App. 214; *St. L. S. W. Ry. Co.* v. *Parks,* 90 S. W. 343; *Fleming* v. *Riddick, Extr.,* 50 Am. Dec. 119; *Sinclair* v. *Stanley* (Tex. Sup.), 7 S. W. 517; 17 Am. & Eng. Enc. of Law (2 Ed.), 882; 17 Am. & Eng. Enc. of Law (2 Ed.), 885; *Florence Cotton & Iron Co.* v. *Louisville Banking Co.* (Ala.), 36 So. 456; Sections 496, 497, 498, Hemingway's Code.

The doctrine of the merger of a cause of action into the judgment is stated in *U. S.* v. *Leffler,* 11 Peters 85.

The doctrine of merger is discussed in 15 R. C. L. 782. See, also, Black on Judgments, sec. 683; *Freeman on Judgments,* sec. 218.

It is true that a few causes are cited as seemingly opposed to this doctrine. We have examined these cases, and find that they do not bear out the citations. In all such cases where it was held that the cause of action was embraced in the assignment of the judgment, it will be found that it was so held because the assignment clearly conveyed the debt as well as the judgment, and that such was the intention of the assignor. In the case at bar only the decree itself was assigned to Castleman, and that was assigned conditionally. Neither of the contingencies upon which the assignment would become operative have transpired, and cannot transpire. Consequently, by the very language of the assignment itself, Castleman acquired nothing under it, and is not entitled to anything under it.

*King* v. *Miller,* 53 Oregon, —, 97 Pac. 542, is the case principally relied upon by counsel for appellant to show that it was the duty of the county to pay to Castleman the two thousand dollar decree assigned to appellee on the day of its rendition. From the judgment rendered in that case by the supreme court of Oregon a writ of error was prosecuted to the supreme court of the United States, the sole question involved in that appeal being whether under section 5136 of the Revised Statutes of the United States a National Bank could act as trustee. The supreme court of the United States held that while said section 5136 of the Revised Statutes prohibited a National bank from acting as trustee and holding lands for third persons, that it did not prohibit the bank from being the assignee of a judgment to collect the judgment and distribute the proceeds thereof, where the assignment was not made merely to enable it to use in its own name, and intimated that even if said section prohibited a National bank from acting as trustee, only the Govern-

ment could raise the question as to whether a National bank, in acting as trustee, violated said section 5136. That was the only point submitted to or decided by that court. See *Miller* v. *King*, 223 U. S. 505.

*King* v. *Miller*, is the only case found in which it was held that an absolute assignment of a judgment which is subsequently reversed passes to the assignee, the cause of action upon which the judgment was based after the reversal of the judgment, unless a contrary intention appears from the assignment. To that extent the decision seems to be wrong in principle, and contrary to the weight of authority, and opposed to the very cases, text books and encyclopedias cited to support it.

II.  Whether in view of the fact that there were two claimants to the fund, if the board was in doubt as to whom the money belonged, and as to whom it could safely pay the money as between Castleman and appellee, it was the duty of the board to pay the money into court with a bill of interpleader, so that the money could be awarded by the court to the party showing the right to receive it.

In determining the second point, it is proper to consider the conduct of the board of supervisors of the county in order to determine whether they acted in good faith in paying the two thousand dollar decree to Castleman, and whether the county is now entitled to the aid of a court of equity to extricate it from the position in which it is placed by its board of supervisors failing to perform their duty, to say the least of it.

Prior to the payment of the money to Castleman, the position of the county stated most favorably to it was that of a judgment debtor in possession of a fund claimed by the appellee and Castleman. The county was a mere stakeholder, with no interest in the matter except to pay the money to the person entitled to receive it. It was under no duty to determine which of the two claimants

was entitled to the money. The county could therefore pursue either one of two courses: first, pay the money to one of the claimants and take the risk of paying it to the right one, which they did. Second, file a bill of interpleader and risk nothing. 23 Cyc. 15.

The county has no equitable rights in the premises but even if it had, it would not now be entitled to the aid of a court of equity in asserting those rights, because its board of supervisors failed to resort to the equitable procedure of interpleader when it was their duty to so do.

Equity aids only the vigilant and not the slothful and those who sleep on their rights.

III. If the foregoing two points be decided in the affirmative, whether or not that is a complete defense to the mandamus proceeding, in consequence of which the decree dissolving the injunction and dismissing the bill should be affirmed.

As to the third point, if the county turned the money over to Castleman because it belonged to him, and it was its duty to pay it to him, as alleged in the bill, that is a perfect and complete answer and defense to the petition for mandamus. Therefore, if the county's claim is correct, it has a complete and adequate remedy in the mandamus proceeding, and the bill to enjoin that proceeding will not lie. A court of equity will not interfere where the complainant's remedy is clear and unembarrassed at law. See *Pollard* v. *Phelan,* 53 So. 453; *Shotwell* v. *Lawson,* 30 Miss. 27, 64 Am. Dec. 145; *Echols* v. *Hammond,* 30 Miss. 177; *Haynes* v. *Thompson,* 34 Miss. 17; *Boyd* v. *Swing,* 38 Miss. 182; *Saucer* v. *Rouse* (Miss.), 12 So. 481. See also 16 Am. & Eng. Enc. of Law (2 Ed.), 365; 4 Pom. Eq. Jur. (3 Ed.), sec. 1361.

Now, the appellant says that it had notice of the two assignments mentioned hereinbefore, but that the money due under the two thousand dollar decree belonged to Castleman by virtue of the assignment of the three thou-

sand five hundred dollar decree made in June, 1921, a year and a half before the decree for two thousand dollars was rendered. If so, that is a complete defense to the mandamus proceeding. Therefore, the court does not have jurisdiction of the subject-matter of this suit, for the reason that the main issues involved could be determined in the mandamus proceeding, which is sought to be enjoined. *Sargent* v. *Ohio & M. R. Co.,* 1 Handy (Oh.) 452; *Chadwell* v. *Jordan,* 2 Tenn. Ch. 636; *Normandin* v. *Mackey,* 38 Mo. 417, 37 N. W. 954; *Commercial Bank* v. *Fire Ins. Co.,* 84 Wis. 12, 54 N. W. 110; *Pennoyer* v. *Allen,* 50 Wis. 308, 6 N. W. 887; *Sheldon* v. *Mayers,* 81 Wis. 627, 51 N. W. 1082; *Moss Mercantile Co.* v. *First Nat. Bank,* 82 Pac. 8, 2 L. R. A. (N. S.) 657; *Wolf River Lbr. Co.* v. *Brown,* 88 Wis. 638, 60 N. W. 997; *Taylor* v. *Matteson,* 86 Wis. 120, 56 N. W. 829; *Morse* v. *Marshall,* 97 Mass. 552; *Warner* v. *Trow,* 36 Wis. 195; *Gardner* v. *Buckee,* 3 Cow. 120, 15 Am. Dec. 256; *Lawrence* v. *Milwaukee,* 45 Wis. 306; *Doty* v. *Brown,* 4 N. Y. 71, 53 Am. Dec. 350; *Butcher's Benev. Assn.* v. *Cutler,* 26 La. Ann. 500; *Evans* v. *Taylor,* 28 W. Va. 184; *Anthony* v. *Valentine,* 130 Mass. 120; *Coombs* v. *Warren,* 17 Me. 404; *Clark* v. *Clapp,* 14 R. I. 248; *Gardner* v. *Oliver Lee & Co's Bank,* 11 Barb. 558.

IV. Whether a mandamus proceeding can be enjoined at all. An injunction does not lie to restrain mandamus proceedings. 221 Cyc. 811. Such proceedings are in the nature of equitable proceedings. *In re Skinner* v. *Eddy Corp.,* 44 Sup. St. Rep. 446. And this is another reason why a decree of the court below dissolving the injunction should be affirmed.

V. Whether, if the four preceding points be decided in the negative, the county, which is not a party to the assignment, is entitled to have it reformed.

As to the reformation of the Castleman assignment, it

is clear from the bill that the county is not a party to that assignment, nor claiming under a party thereto in privity. Yet, it is seeking to have that assignment reformed, and seeking that reformation against appellee, who is not a party to the assignment, but a stranger to it. This position is untenable. 10 R. C. L. 299; 32 Cyc. 392; *Campbell* v. *Lowe,* 66 Am. Dec. 339; 23 R. C. L. 383.

Even if the county were a party to the assignment, and had any right to insist upon a reformation of it, it would be estopped from asserting that right because of its failure to pay the money into court and interplead the claimants thereto, as was its duty to do. 24 Am. & Eng. Enc. of Law (2 Ed.), 655.

It was argued in the court below that the injunction should be maintained in order to prevent a multiplicity of suits and circuity of action, because when the county is ordered by the writ of mandamus to pay the money to appellee, then it will have to sue Castleman to recover the money it has paid him. There are several answers to this: (1) This case does not come within the rule governing multiplicity of suits as construed by this court in *Cum. Tel. & Tel. Co.* v. *Williamson,* 101 Miss. 1, 57 So. 559. (2) But for the negligence or wilfullness of the county in failing to perform its duty to pay the money into court with a bill of interpleader, no suits at all would have been necessary. The county can have no advantage from its own wrong. (3) The money having voluntarily been paid to Castleman by the county, it cannot now recover it from him, and hence a suit against him is unnecessary, 24 R. C. L. 141. Equity does not interpose to relieve against a situation brought about by a party's negligence, fraud or wrong. 24 Am. & Eng. Enc. of Law (2 Ed.), 655; 2 J. C. 64, 68, 69.

It is not alleged that the assignor owes the county anything and therefore its interests could not be affected even if the assignment were made for the purpose of defrauding the assignor's creditors. Only a creditor who

was injured by the assignment is entitled to raise that question. *High Point Casket Company* v. *Wheeler,* 182 N. C. 459, 109 S. E. 379; 19 A. R. L. 393; *Newsum* v. *Russell,* 77 N. C. 277.

For the reasons stated in the beginning of the argument in this brief, it is clear that the injunction in this case was improvidently granted, and that the court below was correct in dissolving the injunction and dismissing the bill.

*Montgomery & Montgomery,* for Humphreys county, in reply.

I. *The assignment to the Castlemans of the three thousand five hundred dollar decree necessarily carried the cause of action upon which that decree was based, and entitles the Castlemans to the same rights in the later decree for two thousand dollars as they held in the first decree.* A careful review of the authorities discloses that the assignee of a judgment which is later reversed, is always entitled, especially in a court of equity, to the proceeds of a later judgment rendered upon the same cause of action. Even the Connecticut court would not go contrary to this doctrine. *Brown* v. *Scott,* 25 Cal. 189; *King* v. *Miller,* 53 Or. 53, 97 Pac. 542; 7 Ann. Cas. Note on pages 423-424; 15 R. C. L. 777-778, sec. 230; 23 Cyc. 1419-1420; 5 C. J., secs. 129, 951; Freeman on Judgments, sec. 431; Black on Judgments, secs. 948, 951, 952; Note in 1 L. R. A. (N. S.) 150.

So the Castlemans are equitable assignees and pledgees for collateral security of this two thousand dollar judgment. The only authority in the world, so far as we can find, that ever reached a contrary conclusion was the court in *Railway* v. *Parks,* and in that case the court was simply construing a statute of that state which controlled the decision.

We submit, therefore, that payment of the two thou-

sand dollars by Humphreys county to the Castlemans was a discharge thereof if the county can prove, when the case is heard upon its merits, that all of the allegations of the bill of complaint are true.

II.   We agree that Humphreys county might have filed a bill of interpleader and have summoned the Castlemans, Messrs. Henry, Canizaro & Henry, and the Cashins into court, and that the chancery court would have had jurisdiction to have determined the relative rights of the parties.   If Humphreys county had ever dreamed that any serious contention would ever be made on behalf of the second assignee, this course would have been followed.   It was the belief of the county that the second assignment had been made in order to avoid payment of a judgment enrolled against J. M. Cashin in Humphreys county and not satisfied.   It was only out of abundance of caution that an indemnity bond was required of the Castlemans.

However, the fact that there are rival claimants of the same fund, does not mean that a debtor must pay both of them if he fails to file a bill of interpleader.   The debtor can pay either one of the parties at his peril.   Thereafter, the debtor is entitled to all of the rights and privileges of any other litigant, and if he can establish the fact that he has paid the fund to the party rightfully entitled to receive it, he is discharged.

Opposing counsel seem to charge Humphreys county with unclean hands and bad faith because they promptly paid this judgment.   If the county has paid the judgment to the parties rightfully entitled to its custody, then there is an end of the matter.   If the county has not done so, then Eugenia C. Cashin will be directed to be paid.   This is a question for the court to adjudicate.   Humphreys county is not required to pay a judgment twice, just because there happens to be two claiminats.   If Humphreys county has made a mistake, then it will be liable for the

consequences, but this does not mean that the courts are not open to adjudicate the correctness or the incorrectness of the payment to the Castlemans, and the county is entitled to raise every question, both legal and equitable, in behalf of itself and its indemnitors, in defense of its position.

III.   The county did not enjoin proceedings on a writ of mandamus.   The county enjoined proceedings for a writ of mandamus.   If Humphreys county had waited until the writ had been issued, then the remedy of Humphreys county would have been by direct appeal as provided by statute.   Humphreys county is simply enjoining a suit over in the circuit court which is familiar practice in Mississippi.  *Hladovec* v. *Paul,* 222 Ill. 254, 78 N. E. 619.

IV.   Humphreys county is in privity with the Castlemans by virtue of the indemnity contract given by the Castlemans to the county.   Mrs. Eugenia C. Cashin is in privity with the three thousand five hundred dollar assignment, because she is an assignee with notice and without value from J. M. Cashin, the original assignor in the three thousand five hundred dollar assignment.   How can Mrs. Eugenia C. Cashin be said to be a stranger to the three thousand five hundred dollar assignment, when she claims under an assignment from the original assignor and received that, and only that, which the original assignor had left to convey to her.   She is certainly in privity with the parties to the original three thousand five hundred dollar assignment, because she is an assignee of one of the parties thereto.  *Fidelity & Deposit Company* v. *Henry,* 109 Miss. 858, 69 So. 1011.

Argued orally by *M. V. B. Montgomery,* for appellant, and *J. Morgan Stevens,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellant, Humphreys county, filed its bill for injunction in the chancery court of that county against J. M. Cashin and his wife, Eugenia C. Cashin, and S. Castleman and his wife, Pauline Castleman, by which it sought to enjoin Mrs. Cashin from prosecuting a mandamus suit against appellant, which she had instituted in the circuit court of Humphreys county, and praying relief in the alternative against the Castlemans on an indemnity bond the latter had executed to the county. An injunction was issued and served according to the prayer of the bill. The first hearing in the court below was on motion of appellees the Cashins to dissolve the injunction on the face of the bill. This motion was sustained, and the injunction dissolved. The Castlemans answered the bill, making their answer a cross-bill. Appellees Cashin demurred to the original bill, as well as the cross-bill of the Castlemans. These demurrers were sustained and a final decree rendered, dismissing appellant's original bill and the cross-bill of the Castlemans. From which decree, appellant prosecutes an appeal, and the Castlemans a cross-appeal. The case therefore stands upon the allegations of appellant's original bill and the allegations of the cross-bill of the Castlemans, and the demurrers thereto.

The controlling facts out of which the questions to be discussed arise are substantially as follows: In April, 1921, the appellee J. M. Cashin obtained a judgment in the chancery court of Warren county against appellant, Humphreys county, in the sum of three thousand five hundred dollars. From that decree appellant prosecuted an appeal to this court, where the judgment was reversed and the cause remanded. *Humphreys County* v. *J. M. Cashin,* 128 Miss. 236, 90 So. 888. The cause went back to the chancery court of Warren county, where there was another trial, resulting in a judgment in favor of appellee J. M. Cashin against appellant in the sum of two thou-

sand dollars.  On appeal to this court, this judgment was affirmed.  *Humphreys County* v. *J. M. Cashin* (Miss.), 96 So. 316.

While that cause was pending in the supreme court on the first appeal from the judgment of three thousand five hundred dollars, appellee J. M. Cashin became involved in litigation with his former law partner Murphy.  The latter had filed a bill against him in the chancery court of Humphreys county, asking a settlement of their partnership affairs and the appointment of a receiver to take charge of the partnership assets.  On the hearing of that cause, the court appointed a receiver to take charge of and wind up the affairs of the partnership.  From that decree, appellee J. M. Cashin prosecuted an appeal to this court, with appeal and *supersedeas* bond in the sum of five thousand dollars.  On appeal this court affirmed the decree of the court below.  *J. M. Cashin* v. *C. M. Murphy* (Miss.), 90 So. 331; Id., 132 Miss. 834, 96 So. 747.  The appeal and *supersedeas* bond given in that case was signed by cross-appellants S. Castleman and wife Pauline Castleman.  Appellee J. M. Cashin induced cross-appellants to become his sureties on said bond by assigning to them as security against loss thereon said judgment for three thousand five hundred dollars.  Leaving off the date, signature, and acknowledgment, that assignment is in this language:

"Be it known, that I hereby set over, assign, and convey unto S. Castleman and Pauline Castleman, the decree rendered in my favor v. Humphreys county, Miss., by the chancery court of Warren county, Miss., on the 19th day of April, 1921, for three thousand five hundred dollars, and authorize the said S. Castleman and Pauline Castleman to collect the same in the event said decree be affirmed by the supreme court, hereby authorizing them, or either of them, to use my name for that purpose, if that should be necessary.

"The condition of this assignment is that, whereas the

said S. Castleman and Pauline Castleman have this day executed as sureties, a *supersedeas* bond for me in the sum of five thousand dollars, in the case of *C. M. Murphy v. J. M. Cashin,* pending in the chancery court of Humphreys county, Miss., if they shall be required to pay any sum of money because of their becoming sureties upon said bond, then they are to reimburse themselves out of the amount collected out of said decree and the balance, if any, they are to pay over to me."

On the second trial in the chancery court of Warren county of the case of appellee J. M. Cashin against appellant and the recovery of a judgment by the former against the latter in the sum of two thousand dollars, said appellee J. M. Cashin thereupon immediately assigned said judgment to his wife, appellee Eugenia C. Cashin, without consideration and with full knowledge on her part of the former assignment of said judgment for three thousand five hundred dollars to cross-appellants. The latter, conceiving themselves to be the owners of the said judgment for two thousand dollars, by virtue of the assignment to them of said former judgment for three thousand five hundred dollars, demanded of appellant the payment to them of said two thousand dollars. At the same time appellee Mrs. Cashin was demanding that said two thousand dollar judgment be paid to her by virtue of her said assignment made on the day the judgment was rendered. Appellant, evidently agreeing with cross-appellants that they had the better right to the proceeds of the judgment, paid the amount of the same to them upon their entering into bond with sureties approved by the board of supervisors of the county to indemnify appellant against any loss it might suffer on account of such payment. Appellee Mrs. Cashin, proceeding on the theory that she had the better right to the proceeds of said judgment, instituted a mandamus suit in the circuit court of Humphreys county against appellant to compel the payment by appellant of said judgment to her. Ap-

pellant filed the original bill in this cause seeking to enjoin the prosecution by her of the mandamus suit, making her and her husband appellee J. M. Cashin, and the cross-appellants Castleman and wife, parties thereto claiming that the Castlemans had rightfully received the fruits of said judgment, and that appellee Mrs. Cashin was not entitled thereto, and asking in the alternative that if the court should hold to the contrary, a decree be rendered in favor of appellant against cross-appellants, on their said indemnity bond.  The bill for grounds of relief set out substantially the facts stated above.

Cross-appellants answered the bill, making their answer a cross-bill, wherein they charged that it was the purpose of the parties to the assignment of said three thousand five hundred dollar judgment to them, to assign therewith the cause of action on which it was based, and asking the reformation of said assignment accordingly if necessary.  Appellees demurred to both the original bill and the cross-bill, which demurrers as stated were sustained, and both bills dismissed.

We will consider first the question whether the chancery court had jurisdiction of this cause, whether it is one of equitable cognizance.  Appellant contends that the chancery court had jurisdiction under the facts of this case to prevent circuity of action and a multiplicity of suits.  In *Roberts* v. *Burwell,* 117 Miss. 451, 78 So. 357, it was held that, although separate and distinct causes of action were involved, nevertheless they were properly joined in one cause in chancery, for the reason that the interests and liability of the defendants, though separate, "flow from the same fountain, or radiate from the same center, or have a common connecting link."  The principles announced in that case were reaffirmed in *Middleton* v. *Howell,* 127 Miss. 880, 90 So. 725.  In the opinion in the latter case in discussing this question, it was said among other things:

"If the parties are left to separate actions, it is evi-

136 Miss.—32.

dent that it would result in several law suits to settle rights in which all have a common interest, they having a common source of title from common grantors, and each having rights affected by the matter in dispute, and it would certainly be in furtherance of justice to have all disputes growing out of the uncertainty of the boundary settled at one time, and equity is better adapted to secure justice in cases like this."

The "connecting link" between the parties to this cause is the two thousand dollar judgment in favor of appellee J. M. Cashin against appellant, and the assignment of the first judgment for three thousand five hundred dollars to cross-appellants, and the assignment of said two thousand dollar judgment by appellee J. M. Cashin to appellee Mrs. Cashin. This two thousand dollar judgment is the center from which all interests involved in this cause "radiate." The mandamus suit of appellee Mrs. Cashin against appellant, in which they are the only parties, could settle nothing, so far as the rights of appellant and cross-appellants are concerned, growing out of the assignment of the first judgment for three thousand five hundred dollars to the latter, and the giving by them of said indemnity bond to the appellant. Certainly at least two suits at law might have been necessary to settle the rights of the parties. If appellee Mrs. Cashin had gained her mandamus suit against appellant, then the latter in turn would have been forced to sue cross-appellants on said indemnity bond. In other words, the whole controversy ranges around the right to the proceeds of the two thousand dollar judgment. We think it clear that the chancery court had jurisdiction.

The main question discussed in the oral argument as well as in the briefs of counsel is whether or not by virtue of the assignment by appellee J. M. Cashin to cross-appellants of the first judgment for three thousand five hundred dollars which was reversed and vacated on appeal, and on another trial a second judgment for two thousand

dollars obtained, cross-appellants became the owners of the cause of action on which the first judgment was based, and therefore entitled to the proceeds of the second judgment. Leaving out of view for the present the discussion of any results that follow, where a judgment assigned is reversed and vacated on appeal, the text books and the cases seem to be unanimous in holding that, by the assignment of a judgment, the assignee succeeds to all the rights, interests, and authority of the assignor, including the debt or claim on which the judgment was based, the lien or security of the judgment on specific property, the right to stand in the assignor's place, as regards the means of its enforcement, in fact all remedies and rights in reference thereto held by the assignor. 15 R. C. L., pp. 777- 778, section 230; 23 Cyc. 1419, 1420; 5 C. J., section 129, p. 951; 2 Freeman on judgments, section 431.

The appellees concede that the authorities so hold, but they argue, and their position seems to be supported by one or two authorities, that, when a judgment assigned is vacated on appeal, the cause of action upon which it was based either goes back to or never has left the assignor; in other words, that the assignee takes the cause of action on which the judgment was based, conditioned on it being a valid judgment, and that, where the judgment turns out to be invalid, the cause upon which it was founded has never left the assignor.

We are of opinion that appellant's contention is supported by the greater number of authorities and the better reasoned cases. One of the leading cases on the subject is *King* v. *Miller,* 53 Or. 53, 97 Pac. 542. The opinion in that case reviews the authorities, and is exhaustive and able as to reasoning. In short the court held that, if a judgment is reversed after assignment, and the action is still pending, the assignee is the owner of the cause of action upon which the judgment was based, and may continue the prosecution of the cause to final judgment and thus enforce the claim upon which the assigned judgment

was based. To the same effect is *Brown* v. *Scott*, 25 Cal. 189; 15 R. C. L., pp. 777, 778; 23 Cyc., pp. 1419, 1420; Black on Judgments, sections 948, 951, 952; 2 Freeman on Judgments, section 431.

We have carefully examined the two cases mainly relied on by appellees to sustain their contention. Conceding that they are in point, our judgment is they are unsound, and we decline to follow them. We hold, therefore, that, by virtue of said assignment to cross-appellants of the first judgment for three thousand five hundred dollars, which was vacated on appeal, they became the owners of the cause of action on which said judgment was based, and therefore, at least in a court of chancery, entitled to the proceeds of the second judgment, which was based on the same cause of action.

Appellees contend that cross-appellants, as sureties on the *supereadeas* bond of appellee J. M. Cashin in the receivership cause, have no right, conceding their claim thereto to be superior to that of appellee Mrs. Cashin, to collect said two thousand dollar judgment until it is shown that cross-appellants have been forced to expend some definite amount of money on account of their suretyship. In other words, that liability was incurred and also discharged by said sureties. The solution of this question depends on the proper construction of the assignment of said judgment between appellee J. M. Cashin and cross-appellants. It seems plain from the language of the assignment that it was the purpose of the parties thereto that the title to said judgment should immediately pass from the assignor to the assignee, and that the latter should have the right to collect the same in the event it was affirmed by the supreme court, where it was then pending on appeal. In the first paragraph of the assignment this language is used:

"And authorize said S. Castleman and Pauline Castleman to collect the same in the event said decree be affirmed by the supreme court, hereby authorizing them,

or either of them, to use my name for that purpose, if that should be necessary.''

And in the condition set out in the second paragraph of the assignment, it is provided that the assignees, out of the proceeds of the judgment collected by them, should reimburse themselves for any sum of money expended by them on account of becoming sureties on said *supersedeas* bond. By the affirmance of the receivership case by the supreme court, liability was fixed on cross-appellants as sureties. It is true that neither the original bill in this case nor the cross-bill sets out that cross-appellants as such sureties had expended any money; but both by the original bill and the cross-bill it is shown that liability had been fixed against the sureties on said bond to be thereafter ascertained. We hold that, under the provisions of said assignment, cross-appellants had the right to collect said judgment in full and account to appellees for any excess in their hands over and above a sufficient amount to discharge their liability as sureties on said *supersedeas* bond.

Appellees argue that mandamus proceedings cannot be restrained by injunction, and cite to sustain that position 22 Cyc. 811. We have examined the authorities listed in the notes to that citation, including Story's Equity Jurisprudence, section 893. The principle is laid down by Story in this language:

''There are cases in which courts of equity will not exercise jurisdiction by way of injunction to stay proceedings at law in any criminal matters or in cases not strictly of a civil nature, as for instance they will not grant an injunction to stay proceedings on a mandamus, or on an indictment or information or writ of prohibition''—citing 2 Ves. 396.

As we understand the authorities referred to, they do not treat of an injunction to stay a *suit* in mandamus, but of an injunction against the enforcement of a judgment recovered in mandamus. The principle is put upon

the ground that mandamus is not strictly a civil proceed-ing. Such an action has criminal aspects so far as the enforcement of the judgment obtained therein is con-cerned. For illustration, resort to fine or imprisonment or both for contempt might be necessary in the enforce-ment of a judgment in a mandamus cause. The authori-ties relied on have no bearing on an injunction against the prosecution of a mandamus suit before judgment is obtained in the latter. We see no reason for any distinc-tion between actions in mandamus and other causes not strictly criminal so far as enjoining their prosecution be-fore judgment is concerned. We, therefore, hold that there is no merit in that contention.

We are of opinion that no other question argued calls for a discussion by the court.

*Reversed and remanded on direct and cross appeal.*